# EXHIBIT A



## U. S. DEPARTMENT OF AGRICULTURE
## RURAL ELECTRIFICATION ADMINISTRATION

REA BORROWER DESIGNATION <u>Texas 121 Brazos</u>

THE WITHIN <u>Wholesale Power Contract dated June 7, 1978</u>
<u>between the Brazos Electric Power Cooperative, Inc.,</u>
<u>and San Miguel Electric Cooperative, Inc. (TX 155)</u>

SUBMITTED BY THE ABOVE DESIGNATED BORROWER PURSUANT TO THE TERMS OF THE LOAN CONTRACT, IS HEREBY APPROVED SOLELY FOR THE PURPOSES OF SUCH CONTRACT.

_____
FOR THE ADMINISTRATOR

DATED July 31, 1978

REA FORM 28a    REV 5-73

WHOLESALE POWER CONTRACT

THIS AGREEMENT, made the 7th day of JUNE, 1978, by and between San Miguel Electric Cooperative, Inc., a Texas Corporation, hereinafter called "San Miguel" and Brazos Electric Power Cooperative, Inc., a Texas Corporation, hereinafter called "Brazos."

WITNESSETH

0.01 WHEREAS, San Miguel is a power supply cooperative which has as its membership, two power supply cooperatives, Brazos and South Texas Electric Cooperative, Inc., hereinafter called "STEC," and 24 distribution cooperatives, and its membership is open to other distribution cooperatives that are now, or may in the future become a member of either Brazos or STEC; and

0.02 WHEREAS, San Miguel is constructing a 400 MW electric generating plant and developing a source of fuel, all near Jourdanton, Atascosa County, Texas, with a planned June, 1980, Date of Commercial Operation for the purpose of generating electric power and energy for Brazos and STEC; and

0.03 WHEREAS, Brazos and STEC desire to purchase blocks of such power and associated energy from San Miguel, and San Miguel has heretofore entered into or is about to enter into a Contract similar in form to this Contract with STEC for the sale of a block of such power and associated energy,

NOW, THEREFORE, in consideration of the mutual undertakings, the parties hereto agree as follows:

ARTICLE 1 - DEFINITIONS

1.01 ADMINISTRATOR: The Administrator of the Rural Electrification Administration.

1.02 CONTRACT YEAR: The initial time period from the effective date of this Contract to the following January 1, and thereafter from January 1 through December 31 of each calendar year during the term of the Contract.

1.03 DATE OF COMMERCIAL OPERATION: The date when the generating plant is operating as an electric generating source, in accordance with electric utility standards for new generating units, as determined by San Miguel.

1.04 <u>MEMBER</u>: Brazos.

1.05 <u>MEMBERS</u>: Brazos and STEC.

1.06 <u>NET GENERATING CAPABILITY</u>: The maximum continuous capacity of the generating plant at the interconnections between the generating plant switchyard and the transmission facilities of the Members. The value is to be determined by test from time to time and established for each Contract Year.

1.07 <u>PROJECT</u>: The San Miguel facilities which are:

    a) a nominal 400 MW nameplate single unit electric generating plant including turbine generator, boiler, cooling tower, flue gas cleaning system, sulphur removal system, ash and sludge removal equipment, plant auxiliary and control systems, and related facilities,

    b) a 345 kV and 138 kV switchyard, including a transmission line to the lignite mine, and four 138 kV line terminals for STEC and two 345 kV line terminals for Brazos,

    c) a lignite mine with reserves, equipment and facilities,

    d) railroads, roads, administrative and service buildings and facilities for construction, maintenance and operation related to the foregoing.

1.08 <u>PROJECT CAPACITY</u>: The net capacity and net energy output of the Project.

1.09 <u>REA</u>: The Rural Electrification Administration.


ARTICLE 2 - USE


    San Miguel shall sell and deliver to the Member and the Member shall purchase and receive a fifty percent (50%) share of the Project Capacity. Such percent shall be increased or decreased to the extent the Members and San Miguel have otherwise agreed with the approval of the Administrator.

## ARTICLE 3 - SCHEDULING OF POWER AND ENERGY FROM THE PROJECT

The Member shall provide San Miguel schedules of its capacity and energy requirements from the Project pursuant to the San Miguel Project Coordination Contract of even date hereof. San Miguel shall have the sole responsibility, considering the Member's schedule of requirements, to schedule and dispatch power and energy from the Project.

## ARTICLE 4 - MEMBER FACILITIES

The Member shall be responsible for providing such transmission facilities as may be reasonably necessary to enable the Member to accept delivery of power and energy at the generating plant switchyard and to protect the electric facilities of San Miguel.

## ARTICLE 5 - COORDINATION OF INTERCONNECTING TRANSMISSION FACILITIES

San Miguel and the Member shall coordinate procedures for switching operations on the interconnecting transmission facilities, pursuant to the San Miguel Project Coordination Contract of even date herewith.

## ARTICLE 6 - SERVICE CONDITIONS

6.01 ELECTRIC CHARACTERISTICS: Electric power and energy to be furnished under this Contract shall be alternating current, three phase, sixty hertz, and at either nominal 345 kV or 138 kV.

6.02 METERING:

a) The transfer of electric power and energy shall be measured by metering equipment in accordance with Texas Public Utility Commission Rules and Regulations and with applicable

industry standards.

    b) San Miguel shall provide all necessary meters at the Project switchyard and shall read or cause them to be read monthly at a time to be agreed upon.

    c) Where the actual transfer of power and energy occurs at a point removed from the point of metering, except as may otherwise be provided in this Contract, the parties hereto shall determine the extent to which registrations should be compensated.

    d) Each meter used under this Contract shall, by comparison with accurate standards, be tested and calibrated at approximate intervals of 12 months. If a meter shall be found inaccurate, it shall be restored to an accurate condition or an accurate meter substituted.

    e) Either of the Members shall have the right to request that a special test of metering equipment be made at any time. If such resulting test discloses that the metering equipment is registering within two percent of normal, the party requesting the test shall bear the expense thereof.

    f) The results of all tests and calibrations shall be open to examination by the Members and a report of every test shall be furnished immediately to the Members. Any meter registering not more than two percent above or below normal shall be deemed accurate. If, as a result of any test, any meter is found to register in excess of two percent either above or below normal, the reading of such meter previously taken for billing purposes shall be corrected according to the percentage of inaccuracy so found, but no such correction shall extend beyond sixty days previous to the day on which inaccuracy is discovered by such test.

    g) San Miguel shall notify the Members in advance of the time of any meter test so that the Members may have representatives present at such test.

ARTICLE 7 - RATES

7.01 RATE:

    a) The Member agrees to pay San Miguel at the rates and on the terms and conditions as shall be determined by the Board of Directors of San Miguel consistent with the provisions of

Section 7.01(b) and Section 7.02 hereof. The first such Rate Schedule A shall be developed not later than three months prior to the Date of Commercial Operation.

   b) The Board of Directors of San Miguel at such intervals as it shall deem appropriate, but in any event not less frequently than once in each calendar year, shall review the rate for electric power and energy furnished hereunder and under a similar Contract with the other of the Members and, if necessary, shall revise such rate so that it shall produce revenues which shall be sufficient, but only sufficient with the revenues of San Miguel from all other sources, to meet the cost of the operation and maintenance (including without limitation, replacements, insurance, taxes and administrative and general overhead expenses) of the generating plant, transmission and other Project related facilities of San Miguel, the cost of any power and energy purchased by San Miguel, the cost of transmission service, land restoration, make payments on account of principal of and interest on all indebtedness of San Miguel, and to provide for the establishment and maintenance of reasonable reserves. Without limiting the generality of the foregoing, the revenues produced by the rate shall be such as will enable San Miguel to comply with all mortgage requirements as they may exist from time to time. San Miguel shall cause a notice in writing to be given to the Members of San Miguel and the Administrator which shall set out all the proposed revisions of the rate with the effective date thereof, which shall be not less than thirty (30) nor more than forty-five (45) days after the date of the notice, and shall set forth the basis upon which the rate is proposed to be adjusted and established. The Member agrees to pay for electric power and energy furnished by San Miguel to it hereunder at the rate from time to time established by the Board of Directors of San Miguel after the effective date of any such revisions at such revised rates; provided, however, that no such revision shall be effective unless approved in writing by the Administrator.

7.02 RATE STRUCTURE: The components of the monthly rate under this contract are:

   a) A capacity component that is one-twelfth of the sum during a Contract Year for depreciation, taxes, insurance, interest and any other fixed costs on the project, excluding such portions of the foregoing that are applicable to the mineral leases, mine development, mine facilities, and other fuel handling and delivery equipment, plus reasonable reserves, all divided by the Net Generating Capability.

b) An energy component that is the sum during a Contract Year of the variable costs of the Project that are related to the production of electric energy, but excluding such variable costs related to mining and delivery of fuel, all divided by the estimated net energy to be produced by the plant during the Contract Year. The costs shall include, but are not limited to, labor, supplies, maintenance, materials, project administration and any costs of San Miguel not covered in a) above and c) below.

c) A fuel component that is the sum of the fixed costs applicable to the mineral leases, mine development, mine facilities, fuel handling and fuel delivery equipment and the variable costs in mining and delivering the fuel that is estimated to be consumed in the production of electric energy during a Contract Year, all divided by the estimated net energy to be produced by the plant during the Contract Year.

ARTICLE 8 - FINANCIAL RESPONSIBILITY

The Members shall collectively be responsible for San Miguel's total cost of owning and operating the Project, including, without limitation, payments due on account of principal and interest on all indebtedness of San Miguel. The percent of San Miguel's total costs for which the Member is responsible shall be equivalent to the Member's percent share of the Project Capacity during the applicable Contract Year, as determined in accordance with the provisions of Article 2 hereof. Payments made by the Member pursuant to the provisions of Article 7 hereof shall be credited to the Member's obligation as set forth in this Article. The obligations of the Member under this Article shall not be deemed to limit the obligations of San Miguel to use reasonable diligence to provide a constant and uninterrupted scheduled supply of electric power and energy, pursuant to the provisions of Section 10.01 hereof.

ARTICLE 9 - BILLINGS AND PAYMENT

9.01 BILLINGS: San Miguel shall bill the Member promptly after the end of each calendar month. Such bills shall be due and paid, not later than the fifteenth day after the bill is mailed by San Miguel.

9.02 SUMS PAST DUE: Any sums past due under this Contract shall bear interest until paid at the rate of one and one-half percent per month, or such lesser rate of interest as may be permitted by Texas Statute. This provision shall not operate to permit late payments or as an excuse for late payments.

9.03 EFFECT OF PAYMENT: Payment of a bill shall not effect the right of the Member to question the bill. In event of a dispute, the Member shall pay the bill as rendered. A refund, if any, shall be made after settlement is agreed upon.

ARTICLE 10 - GENERAL PROVISIONS

10.01 CONTINUITY OF SERVICE: San Miguel shall use reasonable diligence to provide a constant and uninterrupted scheduled supply of electric power and energy under this Contract. If the scheduled supply of electric power and energy shall fail or be interrupted, or become defective through act of God or of the public enemy, or because of accident, labor troubles, or any other cause beyond the control of San Miguel, San Miguel shall not be liable therefor, or for damages caused thereby.

10.02 RIGHT OF ACCESS: Duly authorized representatives of either party hereto shall be permitted to enter the premises of the other party hereto at all reasonable times in order to carry out the provisions hereof.

10.03 NOTICES: Any notices, demands or requests required or authorized by this Contract shall be deemed properly given if mailed, postage prepaid, as follows:

    To San Miguel - Attention: General Manager
                      San Miguel Electric Cooperative, Inc.
                      P. O. Box 280
                      Jourdanton, Texas 78026

    To Brazos -     Attention: General Manager
                      Brazos Electric Power Cooperative, Inc.
                      P. O. Box 6296
                      Waco, Texas 76706

10.04 REA APPROVAL:  This Contract and any amendments shall become effective only upon approval by the Administrator. The date of approval by the Administrator shall be the effective date of the Contract or Amendment.

10.05 SUCCESSORS AND ASSIGNS:  This Contract shall be binding upon the respective parties, their successors and assigns, on and after the effective date hereof.  This Contract may not be assigned without the approval of the Administrator.

10.06 TERM OF AGREEMENT:  This Contract shall continue in full force and effect through June 30, 2020, and, thereafter, until terminated by either party's giving to the other not less than four years written notice of its intention to terminate.

10.07 SEVERABILITY:  The invalidity of any one or more phrases, clauses, sentences, paragraphs, or provisions of this Contract shall not affect the remaining portions of this Contract.

10.08 EXECUTION:  In witness whereof, the parties hereto have caused this Contract to be executed and attested by their duly authorized officers as of the day and year first above written.

(SEAL)                                SAN MIGUEL ELECTRIC COOPERATIVE, INC.

Attest: _____   By _____
              Secretary                    Mac A. Coalson, President

(SEAL)                                BRAZOS ELECTRIC POWER COOPERATIVE, INC.

Attest: _____   By _____
              Secretary                    Curtis Maynard, President

CERTIFIED COPY OF RESOLUTION PERTAINING
TO DEFERRAL OF SAN MIGUEL ELECTRIC
COOPERATIVE, INC. DEPRECIATION

On motion by   G. W. Cates   and seconded by   Joe Forman

the following resolution was adopted:

WHEREAS, San Miguel Electric Cooperative, Inc. adopted a Resolution on October 7, 1981, authorizing and directing its General Manager, L. E. Gross, Jr., to prepare and file with the Public Utility Commission of Texas a rate for San Miguel Electric Cooperative, Inc., calculated to recover the operating costs of San Miguel Electric Cooperative, Inc. based upon straight-line depreciation; with a portion of such depreciation charges being deferred during the first two years of commercial operation, which is projected to commence on or about January 1 1982, and such deferred charges being amortized and recovered in rates over the following five years of commercial operations (third through seventh years), and;

WHEREAS, Brazos Electric Power Cooperative, Inc. and San Miguel Electric Cooperative, Inc. entered into a Wholesale Power Contract dated June 7, 1978, and;

WHEREAS, the proposed rate filing of San Miguel Electric Cooperative, Inc. is in the best interest of this Cooperative.

NOW, THEREFORE, BE IT RESOLVED that Brazos Electric Power Cooperative Inc. approves and endorses the proposed San Miguel Electric Cooperative, Inc. rate and recognizes that the deferred depreciation during the first two years of San Miguel Electric Cooperative, Inc.'s commercial operation will result in the inclusion in the rate for each year of the third through seventh years of commercial operation of twenty percent (20%) of the straight-line depreciation deferred during the first two years of San Miguel Electric Cooperative, Inc.'s commercial operation.

BE IT FURTHER RESOLVED, that Brazos Electric Power Cooperative, Inc. will not directly or indirectly contest the inclusion of such deferred depreciation for the first two years of commercial operation in the rate for the third through seventh years of San Miguel Electric Cooperative, Inc.'s commercial operations.

---

I, Robert H. Bunting, Secretary of Brazos Electric Power Cooperative, Inc. do hereby certify that the above and foregoing is a true and correct copy of a resolution duly passed at a regular meeting of the Board of Directors of said Cooperative, held in Waco, Texas on the 17th day of October, A.D. 1981.

Given under my hand and seal of said Cooperative, this the 17th day of October, 1981.

_Robert H. Bunting_
ROBERT H. BUNTING, Secretary





CONTRACT I.D.
SMEC 199

# SAN MIGUEL ELECTRIC COOPERATIVE, INC.

August 3, 2009

xc: BEC Staff
P.S.
SmEC
original Denise Jones

Mr. Clifton B. Karnei
Executive Vice President and General Manager
Brazos Electric Power Cooperative, Inc
P.O. Box 2585
Waco, Texas 76702-2585

    RE:     Wholesale Power Contract Amendment 1

Dear Clifton:

Amendment 1 dated June 24, 2009, to the Wholesale Power Contract dated June 7, 1978, between Brazos Electric Power Cooperative, Inc. and San Miguel Electric Cooperative, Inc. extended the term of the Contract from June 30, 2020 to December 31, 2037, and added the "Shoeshone" language as required by the Rural Utilities Service (RUS). The United States Department of Agriculture Rural Utilities Services approved the Amendment on July 16, 2009. Your executed and approved original is enclosed, as well as a copy of the cover letter from RUS.

Please contact Paula Harvey at 830-784-3411, Ext. 205 or me at 830-784-3411, Ext. 202, if you have any questions regarding the enclosed. I very much appreciate your assistance in bringing this matter to a successful conclusion.

Sincerely,

Mike Kezar
General Manager

Enclosure

Cc:     Gardner Kendrick – w/enclosures
        San Miguel Senior Staff – w/o enclosures

RECEIVED AUG 05 2009



**United States Department of Agriculture**
**Rural Development**

JUL 2 7 2009

Mr. Mike Kezar
General Manager
San Miguel Electric Cooperative, Inc.
P.O. Box 280
Jourdanton, Texas 78026

Dear Mr. Kezar:

It is my pleasure to inform you that the following agreements have received Administrative approval on July 16, 2009:

- Amendment No. 1 to the Wholesale Power Contract by and between San Miguel Electric Power Cooperative, Inc. and Brazos Electric Power Cooperative, Inc., made on June 24, 2009.

- Amendment No. 1 to the Wholesale Power Contract by and between San Miguel Electric Power Cooperative, Inc. and South Texas Electric Cooperative, Inc., made on June 25, 2009.

Two originals of each approved agreement are enclosed for your distribution. Each enclosed original is provided with a signed RUS Form 28a that indicates the Rural Utilities Service (RUS) approval date of July 16, 2009. RUS will retain one original of each agreement for our records as was provided to us by your letter issued on July 14, 2009.

Please note that the signature of the Administrator for RUS is not required on either of the two agreements. This letter and the signed RUS Form 28a's that are attached provide indication of RUS approval of the two agreements.

Also, the amended wholesale power contract between San Miguel Electric Power Cooperative, Inc. (San Miguel) and South Texas Electric Cooperative, Inc. (STEC) did not contain the date the agreement was made and entered into. RUS recognizes this date to be June 25, 2009 which is the date the agreement was approved by the STEC Board of Directors. The agreement had been approved by the San Miguel Board of Directors on June 16, 2009.

1400 Independence Ave, S.W. · Washington DC 20250-0700
Web: http://www.rurdev.usda.gov

Committed to the future of rural communities.

"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination, write USDA, Director, Office of Civil Rights,
1400 Independence Avenue, S.W., Washington, DC 20250-9410 or call (800) 795-3272 (Voice) or (202) 720-6382 (TDD).

Please contact Mr. Kenneth Solano at (202) 205-9702 should you have any questions.

Sincerely,

WEI M. MOY
Chief, Power Supply Engineering Branch
Power Supply Division

Enclosures

**Amendment No. 1
To
Wholesale Power Contract
By and between
San Miguel Electric Cooperative, Inc.
And
Brazos Electric Power Cooperative, Inc.**

This Amendment is made and entered into as of the 24th day of June, 2009, by and between San Miguel Electric Cooperative, Inc. ("San Miguel") and Brazos Electric Power Cooperative, Inc. ("Brazos"). San Miguel and Brazos are herein individually sometimes referred to as "Party" and collectively as "Parties".

WHEREAS, San Miguel and Brazos have heretofore entered into that certain Wholesale Power Contract, dated June 7, 1978 ("Contract");

WHEREAS, Section 10.06 (Term of Agreement) of the Contract provides that the Contract shall remain in effect through June 30, 2020, and thereafter until terminated by either party's giving to the other not less than four (4) years' written notice of its intention to terminate;

WHEREAS, the Parties have agreed it is to their mutual benefit to extend the term of the Contract;

WHEREAS, the Parties and the United States of America ("Government") acting through the Administrator of the Rural Utilities Service ("Administrator") have agreed it is in the best interest of the Parties and the Government to amend the Contract to include protection for the Government in securing repayment of San Miguel's debt and the purposes of the Rural Electrifications' Act of 1936, as amended, are carried out;

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, San Miguel and Brazos agree as follows:

1. The Contract is amended by deleting Section 10.06 (Term of Agreement) of the Contract in its entirety, and substituting therefore, the following:

    10.06 Term of Agreement.    This Contract shall become effective only upon approval in writing by the Administrator and shall remain in effect through December 31, 2037, and thereafter until terminated by either Party's giving to the other not less than forty-eight (48) months' prior written notice of its intention to terminate.

2. The Contract is further amended by adding the following definition in Article 1 – Definitions as 1.10:

"San Miguel Indebtedness" shall mean all indebtedness however evidenced, of Seller to the Administrator, including, without limitation, all amounts owed under promissory notes, reimbursement obligations, indemnities, or other contractual obligations, whether now existing or hereafter arising.

Article 8A – Enforcement of Obligations

8A.01 – Limitations on Transfers of Member's Assets

(a) Brazos agrees that, for so long as any of San Miguel's Indebtedness is outstanding, Brazos will not, without the approval in writing of San Miguel and the Administrator, take or suffer to be taken any steps for reorganization or dissolution, or to consolidate with or merge into any corporation, or to sell, lease or transfer (or to make any agreement therefore) all or a substantial portion of its assets, whether now owned or hereafter acquired. San Miguel will not unreasonably withhold or condition its consent to any such reorganization, dissolution, consolidation, or merger, or to any such sale, lease or transfer (or any agreement therefore) of assets. San Miguel will not withhold or condition its consent except in cases where to do otherwise would result in rate increases for the other member(s) of San Miguel or impair the ability of San Miguel to repay its secured loans in accordance with their terms, or adversely affect system performance in a material way.

(b) Notwithstanding paragraph (a) of this section, Brazos may take or suffer to be taken any steps for reorganization or dissolution or to consolidate with or merge into any corporation or to sell, lease or transfer (or make any agreement therefore) all or a substantial portion of its assets, whether now owned or hereafter acquired without San Miguel's consent, so long as Brazos shall pay such portion of the outstanding indebtedness on San Miguel's Indebtedness or other obligations as shall be determined by San Miguel with the prior written consent of the Administrator and shall otherwise comply with such reasonable terms and conditions as the Administrator and San Miguel may require either:

(1) To eliminate any adverse effect that such action seems likely to have on the rate of the other members of San Miguel; or

(2) To assure that San Miguel's ability to repay San Miguel's Indebtedness and other obligations of San Miguel in accordance with their terms is not impaired.

(c) The administrator may require, among other things, that any payment owed under (b)(2) of this Article that represents a portion of San Miguel's Indebtedness shall be paid by Brazos in the manner necessary to accomplish a defeasance of those obligations in accordance with the loan documents relating thereto, or be paid directly to the holders of San Miguel's Indebtedness for application by them as prepayments in accordance with the provisions of such documents, or be paid to San Miguel and held and invested in a manner satisfactory to the Administrator.

8.A.02    Specific Performance Available

San Miguel and Brazos and Administrator agree that (i) if Brazos shall fail to comply with any provision of the Contract, San Miguel, or the Administrator, if the Administrator so elects, shall have the right to enforce the obligations of Brazos under the provisions of the Contract and (ii) if San Miguel shall fail to comply with any provision of the Contract, Brazos, or the Administrator, if the Administrator so elects, shall have the right to enforce the obligations of San Miguel under the provisions of the Contract. Such enforcement may be by instituting all necessary actions at law or suits in equity, including, without limitation, suits for specific performance. Such rights of the Administrator to enforce the provisions of the Contract are in addition to and shall not limit the rights which the Administrator shall otherwise have as third party beneficiary of the Contract or pursuant to any assignment and pledge of the Contract and the payments required to be made there under as provided in the Consolidated Mortgage,

Security Agreement and Financing Statement made by and among San Miguel Electric Cooperative, Inc., United States of America (Rural Utilities Service) and Bank of New York Mellon Trust Company, National Association, Trustee dated as of July 1, 2008. The Government shall not, under any circumstances, assume or to be bound by the obligations of San Miguel or Brazos under the Contract except to the extent the Government shall agree in writing to accept and be bound by any such obligations in whole or in part.

3. This Amendment shall become effective only upon approval in writing by the Administrator of the Rural Utilities Service.

4. Except as herein specifically amended or as heretofore amended and/or supplemented, the Contract shall otherwise continue in full force and effect as originally executed.

EXECUTED in triplicate originals.

        San Miguel Electric Cooperative, Inc.

By: _____
        Leroy Skloss, President

ATTEST:

_____
Secretary

        Brazos Electric Power Cooperative, Inc.

By: _____
        Clifton B. Karnei, Executive Vice President
        And General Manager

ATTEST:

_____
Assistant to the Secretary


        United States of America


By: _____

        For Administrator of Rural Utilities Service