# EXHIBIT B

U. S. DEPARTMENT OF AGRICULTURE
RURAL ELECTRIFICATION ADMINISTRATION

REA BORROWER DESIGNATION Texas 148 South

THE WITHIN Wholesale Power Contract dated June 7, 1978

between South Texas Electric Cooperative, Inc., and

San Miguel Electric Cooperative, Inc. (TX 155)

SUBMITTED BY THE ABOVE DESIGNATED BORROWER PURSUANT TO THE
TERMS OF THE LOAN CONTRACT, IS HEREBY APPROVED SOLELY FOR THE
PURPOSES OF SUCH CONTRACT.

FOR THE ADMINISTRATOR

DATED

060547

REA FORM 28a    REV 5-73

CERTIFIED COPY OF A RESOLUTION ACCEPTING THE
"WHOLESALE POWER CONTRACT" AND THE "COORDINATION AGREEMENT"
AS TENDERED TO SOUTH TEXAS ELECTRIC COOPERATIVE, INC.
BY THE SAN MIGUEL ELECTRIC COOPERATIVE, INC.

WHEREAS, on June 7, 1978, the San Miguel Electric Cooperative, Inc. did tender to the South Texas Electric Cooperative, Inc., a "Wholesale Power Contract" and a "Coordination Agreement"; and,

WHEREAS, drafts of these contracts are attached to this resolution and marked Exhibit A and Exhibit B, respectively; and,

WHEREAS, the contracts are essential to the completion of the San Miguel generating plant and related facilities; and,

WHEREAS, South Texas Electric Cooperative, in order to provide its members with the lowest cost reliable electric power and energy, desires to connect to the San Miguel Plant, and take its entitlement for the benefit of its members;

NOW, THEREFORE, BE IT RESOLVED, that the South Texas Electric Cooperative, Inc. Board of Directors approve the referenced contracts as submitted by the San Miguel Electric Cooperative; and,

BE IT FURTHER RESOLVED, that the President, S. F. Ruschhaupt, Jr., and the Secretary, Burt O'Connell, be authorized to execute the contracts and return them to San Miguel Electric Cooperative, Inc. for submission to the Rural Electrification Administration for approval.


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I, Burt O'Connell, Secretary of the South Texas Electric Cooperative, Inc. do hereby certify that the foregoing is a true copy of a resolution passed by the Board of Directors of said Corporation at its meeting held on the 7th day of June, 1978, at the TEC Conference Room, 8140 Burnett Road, Austin, Texas, at which meeting a majority of the Board was present and took part.

IN WITNESS WHEREOF, I have hereto set my hand and affixed the seal of the Cooperative, this .. th day of June, 1978.

_Burt O'Connell_
Burt O'Connell, Secretary


(Seal)

WHOLESALE POWER CONTRACT


THIS AGREEMENT, made the _____ day of _____,
1978, by and between San Miguel Electric Cooperative, Inc.,
a Texas Corporation, hereinafter called "San Miguel" and
South Texas Electric Cooperative, Inc., a Texas Corporation,
hereinafter called "STEC."


WITNESSETH


0.01  WHEREAS, San Miguel is a power supply cooperative which
has as its membership, two power supply cooperatives, STEC and
Brazos Electric Power Cooperative, Inc., hereinafter called
"Brazos," and 24 distribution cooperatives, and its membership
is open to other distribution cooperatives that are now, or
may in the future become a member of either Brazos or STEC;
and

0.02  WHEREAS, San Miguel is constructing a 400 MW electric
generating plant and developing a source of fuel, all near
Jourdanton, Atascosa County, Texas, with a planned June, 1980,
Date of Commercial Operation for the purpose of generating
electric power and energy for STEC and Brazos; and

0.03  WHEREAS, STEC and Brazos desire to purchase blocks of
such power and associated energy from San Miguel, and San Miguel
has heretofore entered into or is about to enter into a Contract
similar in form to this Contract with Brazos for the sale of
a block of such power and associated energy,

NOW, THEREFORE, in consideration of the mutual undertakings,
the parties hereto agree as follows:


ARTICLE 1 – DEFINITIONS


1.01  ADMINISTRATOR:  The Administrator of the Rural Electrifi-
cation Administration.

1.02  CONTRACT YEAR:  The initial time period from the effective
date of this Contract to the following January 1, and thereafter
from January 1 through December 31 of each calendar year during
the term of the Contract.

1.03  DATE OF COMMERCIAL OPERATION:  The date when the generating
plant is operating as an electric generating source, in accordance
with electric utility standards for new generating units, as
determined by San Miguel.

1.04  MEMBER:  STEC.

1.05  MEMBERS:  STEC and Brazos.

1.06  NET GENERATING CAPABILITY:  The maximum continuous capacity of the generating plant at the interconnections between the generating plant switchyard and the transmission facilities of the Members.  The value is to be determined by test from time to time and established for each Contract Year.

1.07  PROJECT:  The San Miguel facilities which are:

     a)  a nominal 400 MW nameplate single unit electric generating plant including turbine generator, boiler, cooling tower, flue gas cleaning system, sulphur removal system, ash and sludge removal equipment, plant auxiliary and control systems, and related facilities,

     b)  a 345 kV and 138 kV switchyard, including a transmission line to the lignite mine, and four 138 kV line terminals for STEC and two 345 kV line terminals for Brazos,

     c)  a lignite mine with reserves, equipment and facilities,

     d)  railroads, roads, administrative and service buildings and facilities for construction, maintenance and operation related to the foregoing.

1.08  PROJECT CAPACITY:  The net capacity and net energy output of the Project.

1.09  REA:  The Rural Electrification Administration.


ARTICLE 2 - USE


     San Miguel shall sell and deliver to the Member and the Member shall purchase and receive a fifty percent (50%) share of the Project Capacity.  Such percent shall be increased or decreased to the extent the Members and San Miguel have otherwise agreed with the approval of the Administrator.

ARTICLE 3 - SCHEDULING OF POWER AND ENERGY FROM THE PROJECT

The Member shall provide San Miguel schedules of its
capacity and energy requirements from the Project pursuant to
the San Miguel Project Coordination Contract of even date hereof.
San Miguel shall have the sole responsibility, considering the
Member's schedule of requirements, to schedule and dispatch power
and energy from the Project.

ARTICLE 4 - MEMBER FACILITIES

The Member shall be responsible for providing such transmission
facilities as may be reasonably necessary to enable the Member to
accept delivery of power and energy at the generating plant switch-
yard and to protect the electric facilities of San Miguel.

ARTICLE 5 - COORDINATION OF
INTERCONNECTING TRANSMISSION FACILITIES

San Miguel and the Member shall coordinate procedures for
switching operations on the interconnecting transmission
facilities, pursuant to the San Miguel Project Coordination
Contract of even date herewith.

ARTICLE 6 - SERVICE CONDITIONS

6.01  ELECTRIC CHARACTERISTICS:  Electric power and energy to
be furnished under this Contract shall be alternating current,
three phase, sixty hertz, and at either nominal 345 kV or 138 kV.

6.02  METERING:

a)  The transfer of electric power and energy shall be
measured by metering equipment in accordance with Texas Public
Utility Commission Rules and Regulations and with applicable

industry standards.

b) San Miguel shall provide all necessary meters at the Project switchyard and shall read or cause them to be read monthly at a time to be agreed upon.

c) Where the actual transfer of power and energy occurs at a point removed from the point of metering, except as may otherwise be provided in this Contract, the parties hereto shall determine the extent to which registrations should be compensated.

d) Each meter used under this Contract shall, by comparison with accurate standards, be tested and calibrated at approximate intervals of 12 months. If a meter shall be found inaccurate, it shall be restored to an accurate condition or an accurate meter substituted.

e) Either of the Members shall have the right to request that a special test of metering equipment be made at any time. If such resulting test discloses that the metering equipment is registering within two percent of normal, the party requesting the test shall bear the expense thereof.

f) The results of all tests and calibrations shall be open to examination by the Members and a report of every test shall be furnished immediately to the Members. Any meter registering not more than two percent above or below normal shall be deemed accurate. If, as a result of any test, any meter is found to register in excess of two percent either above or below normal, the reading of such meter previously taken for billing purposes shall be corrected according to the percentage of inaccuracy so found, but no such correction shall extend beyond sixty days previous to the day on which inaccuracy is discovered by such test.

g) San Miguel shall notify the Members in advance of the time of any meter test so that the Members may have representatives present at such test.


ARTICLE 7 - RATES


7.01  RATE:

a) The Member agrees to pay San Miguel at the rates and on the terms and conditions as shall be determined by the Board of Directors of San Miguel consistent with the provisions of

-4-

Section 7.01(b) and Section 7.02 hereof.  The first such Rate Schedule A shall be developed not later than three months prior to the Date of Commercial Operation.

b)  The Board of Directors of San Miguel at such intervals as it shall deem appropriate, but in any event not less frequently than once in each calendar year, shall review the rate for electric power and energy furnished hereunder and under a similar Contract with the other of the Members and, if necessary, shall revise such rate so that it shall produce revenues which shall be sufficient, but only sufficient with the revenues of San Miguel from all other sources, to meet the cost of the operation and maintenance (including without limitation, replacements, insurance, taxes and administrative and general overhead expenses) of the generating plant, transmission and other Project related facilities of San Miguel, the cost of any power and energy purchased by San Miguel, the cost of transmission service, land restoration, make payments on account of principal of and interest on all indebtedness of San Miguel, and to provide for the establishment and maintenance of reasonable reserves.  Without limiting the generality of the foregoing, the revenues produced by the rate shall be such as will enable San Miguel to comply with all mortgage requirements as they may exist from time to time.  San Miguel shall cause a notice in writing to be given to the Members of San Miguel and the Administrator which shall set out all the proposed revisions of the rate with the effective date thereof, which shall be not less than thirty (30) nor more than forty-five (45) days after the date of the notice, and shall set forth the basis upon which the rate is proposed to be adjusted and established. The Member agrees to pay for electric power and energy furnished by San Miguel to it hereunder at the rate from time to time established by the Board of Directors of San Miguel after the effective date of any such revisions at such revised rates; provided, however, that no such revision shall be effective unless approved in writing by the Administrator.

7.02  RATE STRUCTURE:  The components of the monthly rate under this contract are:

a)  A capacity component that is one-twelfth of the sum during a Contract Year for depreciation, taxes, insurance, interest and any other fixed costs on the project, excluding such portions of the foregoing that are applicable to the mineral leases, mine development, mine facilities, and other fuel handling and delivery equipment, plus reasonable reserves, all divided by the Net Generating Capability.

b)   An energy component that is the sum during a Contract Year of the variable costs of the Project that are related to the production of electric energy, but excluding such variable costs related to mining and delivery of fuel, all divided by the estimated net energy to be produced by the plant during the Contract Year.  The costs shall include, but are not limited to, labor, supplies, maintenance, materials, project administration and any costs of San Miguel not covered in a) above and c) below.

c)   A fuel component that is the sum of the fixed costs applicable to the mineral leases, mine development, mine facilities, fuel handling and fuel delivery equipment and the variable costs in mining and delivering the fuel that is estimated to be consumed in the production of electric energy during a Contract Year, all divided by the estimated net energy to be produced by the plant during the Contract Year.


ARTICLE 8 - FINANCIAL RESPONSIBILITY


The Members shall collectively be responsible for San Miguel's total cost of owning and operating the Project, including, without limitation, payments due on account of principal and interest on all indebtedness of San Miguel.  The percent of San Miguel's total costs for which the Member is responsible shall be equivalent to the Member's percent share of the Project Capacity during the applicable Contract Year, as determined in accordance with the provisions of Article 2 hereof.  Payments made by the Member pursuant to the provisions of Article 7 hereof shall be credited to the Member's obligation as set forth in this Article. The obligations of the Member under this Article shall not be deemed to limit the obligations of San Miguel to use reasonable diligence to provide a constant and uninterrupted scheduled supply of electric power and energy, pursuant to the provisions of Section 10.01 hereof.


ARTICLE 9 - BILLINGS AND PAYMENT


9.01  BILLINGS:  San Miguel shall bill the Member promptly after the end of each calendar month.  Such bills shall be due and paid, not later than the fifteenth day after the bill is mailed by San Miguel.

9.02  <u>SUMS PAST DUE</u>:  Any sums past due under this Contract shall bear interest until paid at the rate of one and one-half percent per month, or such lesser rate of interest as may be permitted by Texas Statute.  This provision shall not operate to permit late payments or as an excuse for late payments.

9.03  <u>EFFECT OF PAYMENT</u>:  Payment of a bill shall not effect the right of the Member to question the bill.  In event of a dispute, the Member shall pay the bill as rendered.  A refund, if any, shall be made after settlement is agreed upon.


### ARTICLE 10 - GENERAL PROVISIONS


10.01  <u>CONTINUITY OF SERVICE</u>:  San Miguel shall use reasonable diligence to provide a constant and uninterrupted scheduled supply of electric power and energy under this Contract.  If the scheduled supply of electric power and energy shall fail or be interrupted, or become defective through act of God or of the public enemy, or because of accident, labor troubles, or any other cause beyond the control of San Miguel, San Miguel shall not be liable therefor, or for damages caused thereby.

10.02  <u>RIGHT OF ACCESS</u>:  Duly authorized representatives of either party hereto shall be permitted to enter the premises of the other party hereto at all reasonable times in order to carry out the provisions hereof.

10.03  <u>NOTICES</u>:  Any notices, demands or requests required or authorized by this Contract shall be deemed properly given if mailed, postage prepaid, as follows:

        To San Miguel - Attention:  General Manager
                        San Miguel Electric Cooperative, Inc.
                        P. O. Box 280
                        Jourdanton, Texas  78026

        To STEC -       Attention:  General Manager
                        South Texas Electric Cooperative, Inc.
                        Route 6, Building 102
                        Victoria, Texas  77901

.10.04   REA APPROVAL:   This Contract and any amendments shall become effective only upon approval by the Administrator. The date of approval by the Administrator shall be the effective date of the Contract or Amendment.

10.05   SUCCESSORS AND ASSIGNS:   This Contract shall be binding upon the respective parties, their successors and assigns, on and after the effective date hereof.   This Contract may not be assigned without the approval of the Administrator.

10.06   TERM OF AGREEMENT:   This Contract shall continue in full force and effect through June 30, 2020, and, thereafter, until terminated by either party's giving to the other not less than four years written notice of its intention to terminate.

10.07   SEVERABILITY:   The invalidity of any one or more phrases, clauses, sentences, paragraphs, or provisions of this Contract shall not affect the remaining portions of this Contract.

10.08   EXECUTION:   In witness whereof, the parties hereto have caused this Contract to be executed and attested by their duly authorized officers as of the day and year first above written.


(SEAL)                          SAN MIGUEL ELECTRIC COOPERATIVE, INC.


Attest: _____        By _____
             Secretary              Mac A. Coalson, President



(SEAL)                          SOUTH TEXAS ELECTRIC COOPERATIVE, INC.


Attest: _____        By _____
             Secretary              S. F. Ruschaupt, Jr., President


-8-